## CASE NO. 19-1732(L), 20-2254, 20-2897

# IN THE

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

## FOR THE THIRD CIRCUIT

---

WAYNE PRATER,

*Appellant,*

v.

PENNSYLVANIA DEPARTMENT OF CORRECTIONS, *et al.*,

*Appellee,*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

---

**REPLY BRIEF OF THE APPELLATE LITIGATION CLINIC AT THE UNIVERSITY OF VIRGINIA SCHOOL OF LAW AS APPOINTED *AMICUS CURIAE* SUPPORTING APPELLANTS**

---

J. Scott Ballenger
Catherine E. Stetson
Samuel P. Gerstemeier (Third Year Law Student)
Tristan D. Locke (Third Year Law Student)
Appellate Litigation Clinic
UNIVERSITY OF VIRGINIA SCHOOL OF LAW
580 Massie Road
Charlottesville, VA 22903
202-701-4925
sballenger@law.virginia.edu

*Amicus Counsel for Appellant*

LANTAGNE LEGAL PRINTING
801 East Main Street Suite 100 Richmond, Virginia  23219 (804) 644-0477

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ....................................................................... iii

INTRODUCTION .................................................................................1

ARGUMENT .....................................................................................2

I.   THIS COURT SHOULD VACATE THE DISMISSAL IN PRATER'S CASE AND REMAND FOR FURTHER PROCEEDINGS....................................................................2

II.  THERE WAS NO IMPLIED CONSENT TO MAGISTRATE JUDGE RESOLUTION BY ALL PARTIES IN THE *VAUGHN* AND *VAUGHAN* CASES .......................................................7

     A. A Consent Filed By A Different Defendant, Even One Represented By The Same Lawyer Or Law Office, Does Not Demonstrate Knowing And Voluntary Consent ..................................7

     B. A "General Appearance" And Filing Dispositive Motions Does Not Evidence Consent To Final Magistrate Judge Resolution ...........14

III. IF THIS COURT REACHES THE MERITS OF ANY OF THESE CONSOLIDATED APPEALS, IT SHOULD REVERSE.......................18

     A. Prater Alleged a Continuous Pattern of Conduct That Placed Him Under Imminent Danger of Serious Physical Harm ..................18

     B. Vaughn and Vaughan Exhausted Their Administrative Remedies by Verbally Reporting Abuse.............................19

     C. This Court Should Not Reach Fact-Intensive Issues That Were Not Decided by the Court Below .......................................21

CONCLUSION....................................................................................24

CERTIFICATE OF BAR MEMBERSHIP............................................................26

i

CERTIFICATE OF COMPLIANCE ........................................................................27

CERTIFICATE OF SERVICE ................................................................................28

CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEF .............................29

CERTIFICATE OF PERFORMANCE OF VIRUS CHECK ................................30

# TABLE OF AUTHORITIES

## Cases

*Abdul-Akbar v. McKelvie*,
239 F.3d 307 (3d Cir. 2001) ............................................................. 18

*Andrews v. Cervantes*,
493 F.3d 1047 (9th Cir. 2007) ........................................................... 19

*Beazer East, Inc. v. Mead Corp.*,
412 F.3d 429 (3d Cir. 2005) ............................................................. 16

*Boyd v. Citizens Bank of Pennsylvania, Inc.*,
No. 2:12-CV-00332, 2014 WL 2154902 (W.D. Pa. May 22, 2014) ................. 23

*Burton v. Schamp*,
25 F.4th 198 (3d Cir. 2022) ........................................................ *passim*

*Chambless v. Louisiana-Pacific. Corp.*,
481 F.3d 1345 (11th Cir. 2007) ......................................................... 10

*Coleman v. Labor & Industry Review Communication*,
860 F.3d 461 (7th Cir. 2017) ............................................................. 8

*Davis v. Harlow*,
632 Fed. Appx. 687 (3d Cir. 2015) ........................................... 10-11

*Dewey v. Volkswagen AG.*,
681 F.3d 170 (3d Cir. 2012) ........................................................... 5, 6

*Downey v. Pennsylvania Dep't of Corr.*,
968 F.3d 299 (3d Cir. 2020) ............................................................. 20

*Enoch v. Perry*,
No. 1:19-cv-00026, 2020 WL 4057643 (W.D. Pa. July 20, 2020) .................. 24

*Forestal Guarani S.A. v. Daros Int'l, Inc.*,
613 F.3d 395 (3d Cir. 2010) ............................................................. 22

*Gonzalez v. United States*,
553 U.S. 242 (2008) ....................................................................... 9

*Hall v. United States*,
44 F.4th 218 (4th Cir. 2022) ..................................................... 18-19

*In re Montgomery Ward & Co., Inc.*,
    428 F.3d 154 (3d Cir. 2005) ............................................................ 22

*In re Tribune Media Co.*,
    902 F.3d 384 (3d Cir. 2018) ...................................................... 16, 17

*Kengerski v. Harper*,
    6 F.4th 531 (3d Cir. 2021) ............................................................ 22

*McArdle v. Verizon Communications Inc.*,
    567 Fed. Appx. 116 (3d Cir. 2014) ........................................... 15, 16

*Montrose Med. Grp. Participating Sav. Plan v. Bulger*,
    243 F.3d 773 (3d Cir. 2001) ........................................................... 22

*O'Hanlon v. Uber Techs., Inc.*,
    990 F.3d 757 (3d Cir. 2021) ........................................................... 22

*Pauley v. Samuels*,
    No. 1:15-cv-158, 2019 WL 4600195 (W.D. Pa. Sept. 23, 2019),
    *aff'd*, No. 19-3666, 2022 WL 1552125 (3d Cir. May 17, 2022) ....................... 23

*Phillips v. Beierwaltes*,
    466 F.3d 1217 (10th Cir. 2006) ...................................................... 12

*Popa v. Harriet Carter Gifts, Inc.*,
    52 F.4th 121 (3d Cir. 2022) ........................................................... 22

*Ricks v. Shover*,
    891 F.3d 468 (3d Cir. 2018) ........................................................... 24

*Roell v. Withrow*,
    538 U.S. 580 (2003) ................................................. 1, 3, 12, 13, 17

*United States v. Mallory*,
    765 F.3d 373 (3d Cir. 2014) ............................................................. 6

*United States v. Shoupe*,
    988 F.2d 440 (3d Cir. 1993) ............................................................. 6

*United States v. Underwood*,
    597 F.3d 661 (5th Cir. 2010) .......................................................... 12

*Wilhelm v. Rotman*,
    680 F.3d 1113 (9th Cir. 2012) ........................................................ 13

**Statutes**

28 U.S.C. § 157 ........................................................................ 16

28 U.S.C. § 636 ................................................................. *passim*

28 U.S.C. § 1915 ................................................................. 2, 18

**Other Authorities**

Fed. R. Civ. P. 20 ................................................................. 6, 7

Fed. R. Civ. P. 73 .......................................................... 1, 8, 10, 11

W.D. Pa. 56 ............................................................................ 22

W.D. Pa. 72(G) ....................................................................... 15

## INTRODUCTION

The Commonwealth agrees that the magistrate judge lacked jurisdiction to dismiss Prater's case, and that this Court should vacate that dismissal and remand for further proceedings. We believe that 28 U.S.C. § 636(c)(3) could be read to confer appellate jurisdiction, but if not, then supervisory power is available.

In the consolidated *Vaughn* and *Vaughan* appeals, the Defendants argue for an expansive conception of implied consent under which parties are presumed to have consented to final magistrate judge resolution whenever they enter a "general appearance" and are represented by an attorney (or law office) that previously filed a consent form for a different party. Those arguments rely on language selectively plucked from *Roell v. Withrow*, without consideration of the factual circumstances and justifications that supported the Supreme Court's decision to recognize implied consent "in circumstances like th[o]se." 538 U.S. 580, 591 n.7 (2003). Defendants ignore the Supreme Court's instructions that "implied consent will be the exception, not the rule" and that the Court expects full compliance with the language of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b). The magistrate judge in *Roell* repeatedly made clear to counsel that she was proceeding on the understanding that § 636(c) consent had been given and proceeded through a trial—well past the point that § 636(b) report-and-recommendation authority would have permitted. None of that is true here. This Court's recent decision in *Burton v. Schamp*, 25 F.

1

4th 198 (3d Cir. 2022), correctly recognized that final decision authority requires consent from *every* litigant and that appearing and litigating before a magistrate judge does not establish implied consent.

There is no reason for this Court to reach the merits of these cases—and certainly not merits issues that the district court has not considered in the first instance. But if it did, we believe that Prater has alleged an ongoing pattern of denial of medical care and that Vaughn and Vaughan exhausted their administrative remedies via policy ADM-001.

## ARGUMENT

## I.   THIS COURT SHOULD VACATE THE DISMISSAL IN PRATER'S CASE AND REMAND FOR FURTHER PROCEEDINGS.

Filing as an *amicus curiae* in Prater's case, the Commonwealth agrees that the magistrate judge lacked jurisdiction to dismiss based on a denial of *in forma pauperis* status. As other circuits have recognized, such denials are immediately appealable and often effectively end the litigation. The Prison Litigation Reform Act's additions to the *in forma pauperis* statute further highlight the substantive and dispositive nature of these motions. *See* 28 U.S.C. §§ 1915(e),(g).

The parties all agree that this Court has the power to vacate any order from a magistrate judge that was rendered without jurisdiction, at least under its supervisory power. Nothing more is necessary to grant relief to Prater. But if the Court chooses

to reach the issue, we believe it could hold that statutory appellate jurisdiction also is available under § 636(c).

Appointed *amicus curiae* argued in our opening brief that Congress describes the passing of a case from a district court judge to a magistrate judge as a "reference." Section 636(c)(1) allows magistrate judges, "[u]pon the consent of the parties," to exercise full jurisdiction in any case "when specially designated to exercise such jurisdiction by the district court or courts he serves." Litigants may appeal directly to the Court of Appeals "upon entry of judgment in any case referred under paragraph (1) of this subsection." 28 U.S.C. § 636(c)(3). This Court and the Supreme Court have used "referred" language in describing cases ostensibly resolved under § 636(c)(1), even when actual consent may not have been obtained. *See Burton*, 25 F.4th at 205 ("At the outset of this case, the district court had jurisdiction over it and referred it to a magistrate judge."); *Roell*, 538 U.S. at 583 ("Without waiting for the petitioners' [consent], the District Judge referred the case to the Magistrate Judge for final disposition . . . ."); *id.* (noting "that the referral order would be vacated if any of the defendants did not consent."). We believe that this Court could understand the "referred under paragraph (1) of this subsection" language in § 636(c)(3) as encompassing all cases that were "specially designated" by the district court for possible magistrate judge resolution under § 636(c)(1) and in fact resolved under the authority of that section, even if there was some defect in the consent process. That

would bring all such cases within the § 636(c)(3) grant of appellate jurisdiction, regardless of whether consent was actually obtained.

The Commonwealth argues that the referral of a case under § 636(c)(1) occurs only when the parties consent. Commonwealth Br. 21; Defendants' Br. 38. Put differently, the Commonwealth argues that when the parties consent, they *refer themselves* from a district court judge to a magistrate judge. The Commonwealth maintains that district court judges only "refer" cases under § 636(b). This is a curious reading, given that the words "referred" and "reference" actually appear only in § 636(c) and not anywhere in § 636(b). We believe it would be more natural to understand the referral mentioned in § 636(c)(3) as a distinct preliminary step initiated by the district court, when it "specially designate[s]" a case or class of cases for potential magistrate resolution under § 636(c)(1).

The canon of constitutional avoidance supports that reading, by ensuring that the court of appeals has statutory jurisdiction to vacate a void judgment that would violate litigants' rights under Article III. The Commonwealth argues that litigants may have alternative remedies—either from the district court, from this Court's supervisory power, or through mandamus. Commonwealth Br. 23-24. But the Commonwealth acknowledges that all of those remedies are entirely discretionary. It seems very unlikely that Congress would have left litigants without some *guaranteed* remedy for a violation of their important right to an Article III tribunal.

4

Surely, for example, Congress did not intend for mandamus to serve as the mechanism for vacating a void judgment under a statutory scheme that was meant to operate "in the same manner as an appeal from any other judgment of a district court." 28 U.S.C. § 636(c)(3). A reading that poses serious constitutional issues that can be avoided only through extraordinary ongoing exercises of discretion should be avoided if possible.

The Commonwealth argues that this Court's decisions in *Burton* and *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170 (3d Cir. 2012), foreclose the possibility of statutory jurisdiction. Commonwealth Br. 20; Defendants' Br. 24. We respectfully disagree. In *Burton*, this Court concluded that "we are statutorily deprived of appellate jurisdiction over the *magistrate judge's orders*" in the absence of consent. *Burton*, 25 F.4th at 205 (emphasis added). That language is best understood as acknowledging that this Court lacked jurisdiction to review *the merits* of the magistrate judge's decision. *See id.* at 204 n.5 ("Because we find that the Magistrate Judge did not have the jurisdiction to dismiss the complaint, we do not reach the merits of his dismissal order."). The *Burton* court did vacate the orders in both cases. *Id.* at 212. The Commonwealth prefers to assume that *Burton* did so as a matter of supervisory power, but the decision does not say so explicitly.

*Dewey* is similarly inapposite. In *Dewey*, unnamed class members argued that they never consented to magistrate judge jurisdiction, and therefore the magistrate

5

judge lacked jurisdiction to certify the class. 681 F.3d at 180. Before addressing the consent issue, the panel briefly discussed the structure of § 636 and noted that when parties do not consent to magistrate judge jurisdiction they appeal to the district court rather than the Court of Appeals. *Id.* This Court then concluded that unnamed class members are not "parties" under § 636(c), and thus the magistrate judge did have jurisdiction to certify the class. *Id.* at 181. The Court had no cause to consider whether a lack of consent by an actual party would eliminate appellate jurisdiction to vacate the judgment. The language the Commonwealth points to is, therefore, dicta. The *Dewey* panel "did not face the issue we face here," and its "pronouncements are non-binding." *United States v. Shoupe*, 988 F.2d 440, 446 (3d Cir. 1993); *see also United States v. Mallory*, 765 F.3d 373, 381 (3d Cir. 2014) ("[I]t is well established that a subsequent panel is not bound by dictum in an earlier opinion.") (internal quotation marks omitted).

Finally, the Commonwealth argues that the magistrate judge did have authority to instruct Prater to amend his complaint, either by dropping one of his claims or by splitting the complaint into two separate cases, in order to cure a perceived violation of Fed. R. Civ. P. 20(a)(2). That may be correct, but it has no significance for the issues here on appeal. Prater could not pay a single filing fee, let alone two, so the magistrate judge's denial of *in forma pauperis* status made either

form of compliance with its Rule 20 directions impossible. On remand, Prater should

be allowed a fair opportunity to cure any defect by filing a new complaint (or two).

## II. THERE WAS NO IMPLIED CONSENT TO MAGISTRATE JUDGE RESOLUTION BY ALL PARTIES IN THE *VAUGHN* AND *VAUGHAN* CASES.

Representing the defendants in the *Vaughn* and *Vaughan* cases, the Office of

the Attorney General (OAG) asserts that a single consent form in each case, signed

by a member of the Office on behalf of one or two original defendants, establishes

that every subsequent defendant who made a "general appearance" represented by

an OAG attorney necessarily "was made aware of the need to consent and the right

to refuse it." Defendants' Br. 24, 30-32. That position expands the limited holding

of *Roell* far beyond what the Supreme Court's opinion justifies and cannot be

reconciled with this Court's decision in *Burton*.

### A. A Consent Filed By A Different Defendant, Even One Represented By The Same Lawyer Or Law Office, Does Not Demonstrate Knowing And Voluntary Consent.

The consent form filed by OAG on behalf of the original defendants in the

*Vaughn* and *Vaughan* cases is not sufficient evidence of implied consent by

subsequent defendants, even if they also were represented by OAG. Defendants

contend that a single consent form present on the docket of the case makes clear that

all subsequent OAG clients were aware of the need to consent and right to refuse.

Defendants' Br. 26-27. But this is a bigger leap than *Roell* and *Burton* can support.

7

This Court's core holding in *Burton* was that § 636(c) authority requires consent from *all* parties. Defendants' proposed approach would eviscerate that rule as a practical matter. Just as consent cannot be transferred from one defendant to another, *see Amicus* Opening Br. 21-22, the presence of one signed consent form does not establish awareness of the need to consent and right to refuse for all subsequent defendants. The Commonwealth in its *Prater* brief alludes to *Burton*'s statement that § 636(c) requires the consent of "at least one party from each side of the 'v.'…". Commonwealth Br. 14 (citing *Burton*, 25 F.4th at 208). But that quotation appears in the court's summary of the Seventh Circuit's opinion in *Coleman v. Labor and Industry Review Commission*, 860 F.3d 461 (7th Cir. 2017). This Court agreed with the reasoning of sister circuits that § 636(c)'s definition of parties "does not distinguish parties who are named, but not served, from parties who have been named and served," but this Court explicitly held that "we read Section 636(c)(1)'s reference to consent by the 'parties' to require consent by *any party* directly affected by an order or a judgment issued by that magistrate judge." *Burton*, 25 F.4th at 208-09 (emphasis added). There is no credible reading of § 636(c) (or Rule 73(b)) in which consent from "one party on each side of the v." could suffice.

As a factual matter, it simply is not fair to presume that an attorney has explained a legal issue requiring knowing and voluntary consent to *all* of her clients

simply because that lawyer (or another lawyer in the same firm or office) previously obtained consent from a different client in the same case. So Defendants emphasize the Supreme Court's reasoning in *Roell* that implied consent could be inferred, in part, from the magistrate judge's repeated reminders *to counsel* that she was proceeding on the understanding that § 636(c) consent had been given. Defendants even argue that whether to proceed before a magistrate judge is a strategic decision belonging exclusively to counsel. *See* Defendants' Br. 29 (citing *Gonzalez v. United States*, 553 U.S. 242, 249-51 (2008)).

Defendants' argument over-reads *Gonzalez*, which held only that counsel could give consent—under the constitution and 28 U.S.C. § 636(b)(3)—to a magistrate judge handling *voir dire* and jury selection without consulting the client. 553 U.S. at 253. The Supreme Court expressly contrasted that scenario with consenting to a full trial (*i.e.*, final order authority). *Id.* at 252. The Court was less concerned with intrusion on the individual party's rights in the *voir dire* scenario because there was no danger that the magistrate's rulings would escape the oversight of a district judge. *Id.* ("nothing in the record or the rules indicates that the District Judge could not have ruled on the issues, all with no delay or prejudice to any trial that had commenced"). "This is not a case where the magistrate judge is asked to preside or make determinations after the trial has commenced." *Id.*

Defendants' argument also fails on its own terms, because there is no reason to presume that the OAG attorneys involved in these cases were aware that each and every defendant needed to consent and had the right to refuse. Prior to this Court's decision in *Burton*, OAG appears to have been relying on the understanding that the § 636(c) consent requirement *did not* require consent from all named parties. *See Burton*, 25 F.4th at 206. At the time the *Vaughn* and *Vaughan* cases were before the magistrate judges, counsel may have believed that § 636(c) does not require evidence of consent from all named defendants before final order authority could be exercised. Indeed, as noted above, the Commonwealth in briefing cannot resist pointing out the language in *Burton* that could (we think incorrectly) be understood as a holding that "consent of at least one party from each side of the v. was sufficient." *See* Commonwealth Br. 14.

More importantly, we do not believe it would be consistent with the letter or spirit of § 636(c) or Rule 73(b) to simply presume informed and voluntary consent whenever parties are represented by competent counsel and counsel does not object to magistrate judge resolution. The cases cited by Defendants do not support such an expansive rule. In *Chambless v. Louisiana-Pacific*, 481 F.3d 1345, 1350 (11th Cir. 2007), the court determined that the plaintiff's consent in one action was sufficient evidence of consent *by the same plaintiff* in a subsequent action that was joined with the original action. And the consent finding in *Davis v. Harlow*, 632 Fed.

Appx. 687, 689 n.1 (3d Cir. 2015), was supported by reliance on post-judgment consent, which this Court has now expressly rejected in *Burton*. The Supreme Court did not think consent could be inferred merely from representation by capable counsel in *Roell* either; instead, the Court relied on repeated, clear, and direct communications between the magistrate judge and counsel about the consent issue, and also stressed the fact that the case proceeded to a stage (a full trial) that could not have happened without consent. Even then, *Roell* was a close case.

Of course we agree that the Commonwealth's attorneys do not suffer from amnesia and are aware in a general sense that consent could be withheld. But the statute and Rule reflect significant concern with ensuring that "the parties" understand their rights and require that the relevant "Rules of court … shall include procedures to protect the voluntariness of the parties' consent." 28 U.S.C. § 636(c)(2); *see also* Fed. R. Civ. P. 73(b). They also reflect a clear choice by Congress that magistrate judge resolution should be an affirmative opt-in regime, not a "silence is consent" opt-out regime. Against that backdrop, counsel's general awareness of the law should not be regarded as sufficient evidence of notice requirements being satisfied. Courts instead should look to the communicative effect of the evidence on record to determine what objective notice was given to the parties.

The forms and communications in the record of these cases do not establish the necessary notice and informed consent. Consent forms were filed only for a small

minority of defendants, and even for those defendants the form does not appropriately reflect "procedures to protect the voluntariness of the parties' consent" as required by § 636(c)(2). The Defendants correctly note that the requirement that the clerk "shall also advise the parties that they are free to withhold consent without adverse substantive consequences" appears only in the sentence about *subsequent* repeated inquiries. But the Supreme Court clearly held in *Roell* that "notification of the right to refuse the magistrate judge is a prerequisite to any inference of consent." 538 U.S. at 587 n.5. Consistent with the Supreme Court's reasoning, other circuits have held that § 636(c)(2)'s admonition about the right to decline should be included in the initial consent notice. *See United States v. Underwood*, 597 F.3d 661, 669 (5th Cir. 2010) (citing *Roell*, 583 U.S. at 587 n.5); *see also Phillips v. Beierwaltes*, 466 F.3d 1217, 1221 (10th Cir. 2006) (same). The Defendants ironically argue that the consent form did not need such language, but also that it sufficiently conveyed awareness to counsel of the need to consent and right to refuse for all subsequent defendants. Regardless, both the statute and the Rule clearly attempt to protect reluctant parties structurally, by requiring that the initial choice be communicated only to the court clerk and not to the magistrate judge or district court. A regime in which consent by a single defendant triggers a presumption of consent by all subsequent defendants unless they affirmatively speak up would entirely defeat the objective of those requirements.

It is telling that the forms used in other districts, and the U.S. Judiciary's standard form AO 85, include substantially more robust disclosures and a clear 3-step process. The Commonwealth cites to *Wilhelm v. Rotman* as upholding a "substantially similar form." *See* Defendants' Br. 25 (citing 680 F.3d 1113 (9th Cir. 2012)). But that form at least directly explained that "[w]ithout the written consent of the parties presently appearing pursuant to 28 U.S.C. Sec. 636(c), a magistrate judge cannot conduct all proceedings and enter judgment in this case . . ." 680 F.3d at 1117. It also explained that if consent is withheld the magistrate shall only continue to perform duties as laid out in the relevant district local rule. *Id. Wilhelm* also overlooked the language in *Roell* reasoning that knowledge of the right to refuse is a precondition to any voluntary consent, and Defendants' argument now repeats that mistake.

Of course, this Court will exercise its own sound supervisory discretion over rules and forms within the districts. Appointed *amicus curiae* merely observes that the forms and procedures in the Western District diverge from the practices of other districts, and appear to rely excessively on implied consent to cure any defects. The Supreme Court has explained that litigants must be appropriately notified of their rights before any consent, express or implied, can be given. *Roell*, 538 U.S. at 587 n.5. Systematically presuming consent to magistrate judge final order authority unless someone objects was not the intention of the Federal Magistrates Act and

13

cannot be squared with the *Roell* majority's admonition that implied consent should remain an exception, not the rule.

### B. A "General Appearance" And Filing Dispositive Motions Does Not Evidence Consent To Final Magistrate Judge Resolution.

Defendants also err in contending that merely appearing before a magistrate judge and participating in litigation of dispositive motions evidences voluntary submission to the magistrate judge's final order jurisdiction. This Court clearly rejected that position in *Burton*, where the consolidated *Williams* appeal shared many of the factual circumstances of the *Vaughn* and *Vaughan* cases. In *Williams*, the three defendants were represented by the same attorney, who filed dispositive motions on their behalf. *Burton*, 25 F.4th at 204. But those "general appearances," even over a lengthy period, were not enough to support implied consent. *See id.* at 211.

Defendants' argument fundamentally overlooks the fact that a magistrate judge handling litigation up through the briefing and argument of dispositive motions could be exercising either § 636(b) report-and-recommendation authority or § 636(c) final order authority. *See* 28 U.S.C. §§ 636(b)-(c). *Roell* was different because the litigants continued to appear before the magistrate judge *through the denial of summary judgment and a trial.* But simply appearing before a magistrate judge and filing pre-trial motions does not indicate consent to final order authority,

14

absent context and express instructions making clear that the magistrate judge plans to use that authority.

Defendants argue that there was no § 636(b) reference in these cases, which they suggest negates any possibility that the magistrate judge was proceeding under that authority. *See* Defendants' Br. 31-32. But the local rules of the Western District create an automatic assignment and blanket referral to the magistrate judges in all prisoner civil rights cases. *See* W.D. Pa. 72(G). Defendants also have no response to the fact that the magistrate judges explicitly referred to § 636(b) report-and-recommendation authority in some intermediate orders. *See Amicus* Opening Br. 29-31. From what *amicus curiae* can discern, the parties to these cases would have been required to appear before the magistrate judges and litigate these cases up through the briefing and argument of dispositive motions *even if they had explicitly objected to § 636(c) authority*. If that is right, then their mere "appearance" and participation signifies nothing at all.

Defendants' citation to *McArdle v. Verizon Communications, Inc.* actually refutes their position. *See* Defendants' Br. 32 (citing 567 Fed. Appx. 116, 118 (3d Cir. 2014)). In *McArdle*, this Court explained that the statute "requires neither the consent of the parties nor an order that refers a matter to a magistrate judge for a report and recommendation," and that even "[i]f a party elects to have the case assigned to a District Judge" the Western District's local rules provide that "the

Magistrate Judge shall continue to manage the case by deciding non-dispositive motions and submitting reports and recommendations on dispositive motions, unless otherwise directed by the District Judge." 567 Fed. Appx. at 118 n.5.[1]

The bankruptcy cases cited by Defendants are inapposite. *See* Defendants' Br. 30. "Voluntarily submit[ing] to a decision of the Bankruptcy Court," *In re Tribune Co.*, 902 F.3d 384, 395 (3d Cir. 2018), is not neatly comparable to the more stringent, jurisdictional consent regime contemplated by § 636(c) and *Roell*.

*Tribune* involved 28 U.S.C. § 157(b)(5), a non-jurisdictional statute that provides parties to bankruptcy proceedings with a waivable right to litigate personal injury tort and wrongful death claims before a district court. Unlike § 636(c), § 157(b)(5) has no statutory language that requires the affirmative consent of the parties or that deprives bankruptcy courts of jurisdiction absent such consent. 902 F.3d at 394. Therefore, as this Court ruled in *Tribune*, a party waives her statutory rights under § 157(b)(5) whenever she merely fails "to raise an objection." *Id.* at 396 n.5. Jurisdiction is never in doubt. By contrast, affirmative consent under § 636(c) is a jurisdictional requirement and the statute contains detailed instructions for how consent is secured, requires warnings of the right to refuse without adverse

---

[1] *Beazer East, Inc. v. Mead Corp.*, 412 F.3d 429 (3d Cir. 2005) involved whether an equitable allocation proceeding is the type of matter allowed to be overseen by a magistrate under § 636(b)(1)(B), not whether a formal referral is required for that authority.

substantive consequences, expressly states that rules of court must seek to protect the voluntariness of consent, and prioritizes concealing the parties' election from the magistrate judge and district judges. In *Tribune* this Court also separately considered whether the litigant had waived his *constitutional* right to an Article III tribunal, and concluded that a bankruptcy court "has constitutional authority to enter a final judgment on the same type of claim if a litigant (1) fails to raise a constitutional objection and (2) knowingly and voluntarily assents to the court's adjudication of his claims." *Id.* at 396 n.5. This Court found the necessary "knowing and voluntary" assent in the fact that Younge "made clear that he sought a final judgment on the merits" and asked the bankruptcy court "'to fully evaluate [his claim].'" *Id.* at 396. That context made implied consent even more clear than it was in *Roell*, where the litigants simply continued through trial in the face of repeated statements by the magistrate judge "that she believed they had consented" to § 636(c)(1) authority and was proceeding on that understanding. 25 F.4th at 210 n.51 (citing *Roell*, 538 U.S. at 584). It is far from clear that *Tribune* adopts a more expansive conception of implied consent in the bankruptcy context than *Roell* and *Burton* authorize under § 636(c). Regardless, differences in the statutory contexts make the bankruptcy precedents inapposite here.

A mere appearance and participation in pretrial motions does not genuinely imply consent to final order jurisdiction under § 636(c). Accordingly, this court

17

should vacate the orders in both cases pursuant to its supervisory appellate power or statutory appellate jurisdiction. *See supra* Part I.

## III.   IF THIS COURT REACHES THE MERITS OF ANY OF THESE CONSOLIDATED APPEALS, IT SHOULD REVERSE.

If the Court needs to reach the merits of any of these appeals, it should reverse. Prater alleged a pattern of conduct that placed him in danger of serious physical harm that continued up until the filing of his complaint. Vaughan and Vaughn exhausted their administrative remedies by complying with the DOC policies for inmate abuse. There is no reason for this Court to reach the merits of Vaughan's excessive force claims when they were not addressed by the court below.

### A. Prater Alleged a Continuous Pattern of Conduct That Placed Him Under Imminent Danger of Serious Physical Harm.

*Amicus curiae*'s opening brief explained that Prater's motion to proceed IFP was justified by allegations of an ongoing pattern of prison officials denying or delaying Prater's medical treatment and attempts by prison officials to cause reinjury. This court has previously suggested that such a pattern could be sufficient to demonstrate an imminent danger of serious physical harm. *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 315 n.1 (3d Cir. 2001). Other circuits agree that an ongoing pattern of prison officials repeatedly exposing inmates to threats of serious physical harm can satisfy § 1915(g)'s imminent danger exception. *Hall v. United States*, 44 F.4th 218, 225 (4th Cir. 2022) (if an inmate alleges "a pattern of past conduct that

places an incarcerated person in imminent danger of harm, and which is ongoing, then the litigant meets the exception"); *see also Andrews v. Cervantes*, 493 F.3d 1047, 1056-57 (9th Cir. 2007).

The Commonwealth argues that Prater eventually received treatment for his medical needs and that his allegations refer to incidents that occurred long before he filed his complaint. But Prater alleged that a pattern of deliberate indifference to injuries stemming from his torn Achilles continued until the filing of his complaint. JA(Prater)-28-29. Prater also alleged that, for months, prison officials attempted to increase the risk that he would reinjure his Achilles tendon. JA(Prater)-28-29. Prater even preemptively asked the district court to allow him to amend his complaint with additional "exhibits and evidence" to demonstrate the continuing pattern of harm. JA(Prater)-29. Even if his allegations were insufficient, the magistrate judge should have granted Prater that opportunity to amend. The Commonwealth notably does not contest this point.

## B. Vaughn and Vaughan Exhausted Their Administrative Remedies by Verbally Reporting Abuse.

Vaughan and Vaughn both exhausted administrative remedies when they verbally reported abuse to prison officials under DC-ADM 001.

Defendants argue that the procedures described in ADM 001 merely place the DC-ADM 804 grievance process "on hold" while the DOC investigates abuse. Defendants' Br. 24. The fact that a litigant *may* proceed with an ADM 804 grievance

after reporting abuse consistent with ADM 001 does not, however, necessarily mean that he *must* do so. Nothing in ADM 001 requires that an inmate file an ADM 804 grievance. The plain text of ADM 001 indicates that an inmate who elects to exclusively report abuse verbally or in writing need not file a grievance at all.

Defendants also argue that because ADM 001 does not explicitly provide for money damages, inmates cannot exhaust a money damages claim by that route. This Court has already rejected a similar line of reasoning. In *Downey*, the inmate-plaintiff suffered from an urgent medical condition. *Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299 (3d Cir. 2020). ADM 804 provides that, rather than filing a grievance, inmates with urgent needs should "contact the nearest staff member for immediate assistance." *Id.* at 306. Downey followed this procedure and subsequently sued for money damages. On appeal, defendants argued that Downey's reports to prison staff about his condition were insufficient to exhaust administrative remedies. *Id.* at 307 ("Defendants posit that Downey was required to grieve his claims to pursue monetary damages even if his condition was urgent."). This Court rejected that argument and noted that nothing in ADM 804 requires an inmate to grieve his claims after following an alternative DOC procedure. *Id.* ("Neither the Inmate Handbook nor DC-ADM 804 suggests that a prisoner faced with an urgent situation must nonetheless file a grievance if seeking monetary damages."). Similarly here, nothing in ADM 001 or 804 suggests that a prisoner that verbally reports abuse must

nonetheless file a grievance if seeking money damages. The logic in *Downey* also demonstrates that it is irrelevant that the purpose of ADM 001 is to discipline prison officials rather than to compensate victims of abuse. Surely the purpose of the urgent need exception in *Downey* was to quickly provide aid to inmates. However, this did not preclude Downey from seeking monetary damages after exhausting that process.

Defendants maintain that there is "nothing confusing or obscure" about a DOC policy that instructs inmates to report abuse in three different, coequal ways but contains an unwritten limitation regarding which of those methods will exhaust administrative remedies. Defendants' Br. 45. But as *amicus curiae* previously explained, several district courts in Pennsylvania have held that ADM 001 provides an alternative path to exhaustion, and that an ADM 804 grievance is unnecessary. *See Amicus* Opening Br. 48-49 (collecting cases). Defendants' counsel articulates a plausible alternative vision of how these rules could interact. The Pennsylvania Department of Corrections could amend the policies to adopt that vision explicitly. But until it does, it is not fair to punish *pro se* inmates for pursuing an administrative course that appears—even to federal judges—to be sanctioned by the existing policies.

### C. This Court Should Not Reach Fact-Intensive Issues That Were Not Decided by the Court Below

The magistrate judge granted summary judgment to the Vaughan defendants for failure to exhaust but did not otherwise reach the merits of his excessive force

claim. JA(Vaughan)-14 & n.3. Defendants nonetheless ask this Court to affirm on the alternative ground that prison officials did not use excessive force against Vaughan as a matter of law. Defendants' Br. 47. It should decline to do so.

This Court has repeatedly held that it should "decline to resolve issues not decided by a district court, choosing instead to allow it to decide in the first instance." *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 132 (3d Cir. 2022); *see also Kengerski v. Harper*, 6 F.4th 531, 541 (3d Cir. 2021); *Forestal Guarani S.A. v. Daros Int'l, Inc.*, 613 F.3d 395, 401 (3d Cir. 2010); *In re Montgomery Ward & Co., Inc.*, 428 F.3d 154, 166 (3d Cir. 2005); *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 778 (3d Cir. 2001). Indeed, the Commonwealth argues in its brief for the Prater case that remand is appropriate because "after all, the District Court did not have an opportunity to rule on the issues and this Court is a 'court of review, not of first view.'" Commonwealth Br. 27 (citing *O'Hanlon v. Uber Techs., Inc.*, 990 F.3d 757, 763 n.3 (3d Cir. 2021)) (cleaned up).

Moreover, the nature of the proceedings below warrants remand and consideration by the district court. Defendants argue that there is no material factual dispute given that Vaughan failed to provide a responsive concise statement of material facts in compliance with Local Rule 56. Defendants' Br. 48. However, he did file a response in opposition to the government's motion for summary judgment. JA(Vaughn)-7. In cases where *pro se* litigants fail to comply with Local Rule 56, the

22

district court may "consider any facts properly alleged in . . . *pro se* responses that specifically contradict [movant's] statements of fact, to the extent that they are supported by the record." *Pauley on behalf of Asatru/Odinist Faith Cmty. v. Samuels*, No. 1:15-CV-158, 2019 WL 4600195, at *3 (W.D. Pa. Sept. 23, 2019), *aff'd*, No. 19-3666, 2022 WL 1552125 (3d Cir. May 17, 2022). Similarly, when a litigant is deposed, the court may also consider his deposition testimony at summary judgment. *Id.*; *see also Boyd v. Citizens Bank of Pennsylvania, Inc.*, No. 2:12-CV-00332, 2014 WL 2154902 (W.D. Pa. May 22, 2014).

The district court should have the opportunity to assess compliance with its own local rules, and the factual disputes apparent on this record, in the first instance. Defendants claim that during the January 2018 incident CO Christopher only sprayed Vaughan with pepper spray after Vaughan acted aggressively and refused to return to his cell. Defendants' Br. 47-48. However, Vaughan's deposition testimony, which the government cites in its recitation of the facts, contradicts both of these claims. JA(Vaughan)-253. ("He said I took an aggressive stand, [sic] but that never happened. I never did anything aggressive."); JA(Vaughan)-251 ("Then I seen [sic] he was getting ready to spray me, so I tried running in my cell."); JA(Vaughan)-255 ("I was in the process of running into my cell before he sprayed me."). Vaughan also claims that in the moments before he was first sprayed CO Woods threatened to beat him. JA(Vaughan)-250 ("So he tell me, you [sic] going to die from my hitting you.").

The use of pepper spray against inmates is often permissible, but it would be unreasonable to use pepper spray when its "usage was no longer to secure compliance but to inflict needless pain." *Enoch v. Perry*, No. 1:19-CV-00026, 2020 WL 4057643, at *7 (W.D. Pa. July 20, 2020); *see also Ricks v. Shover*, 891 F.3d 468, 480 (3d Cir. 2018) (the key inquiry in excessive force claims is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm"). Defendants maintain that the use of pepper spray against Vaughan was an attempt to force an aggressive inmate to comply with orders. Vaughan contends that prison officials first threatened his life and then sprayed him after he attempted to comply with their orders by "running into" his cell. The district court should have an opportunity to consider these factual disputes, and Defendants' argument that some of them may be irrelevant because of a *pro se* litigant's non-compliance with technical local rules, in the first instance.

## CONCLUSION

This court should vacate the judgments below so that they can proceed before a court with proper jurisdiction. In the alternative, if the Court finds that the magistrate judges possessed jurisdiction, it should reverse their rulings on the merits.

Appointed amicus counsel respectfully suggests that oral argument would assist the Court's consideration of these important issues.

Respectfully submitted,

/s/ J. Scott Ballenger

J. Scott Ballenger
Catherine E. Stetson
Samuel Gerstemeier (Third Year Law Student)
Tristan Locke (Third Year Law Student)

UNIVERSITY OF VIRGINIA
SCHOOL OF LAW
Appellate Litigation Clinic
580 Massie Road
Charlottesville, VA 22903-1789
(202) 701-4925
sballenger@virginia.edu

*Amicus Curiae for Appellants*

## CERTIFICATE OF BAR MEMBERSHIP

Pursuant to Local Appellate Rule 46.1(e), the undersigned hereby certifies that he is counsel of record and is a member of the bar of the United States Court of Appeals for the Third Circuit.

March 2, 2023                                    */s/ J. Scott Ballenger*

                                                 J. Scott Ballenger
                                                 *Amicus Curiae for Appellants*

**CERTIFICATE OF COMPLIANCE WITH THE TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

I.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the brief contains 5,953 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

II.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word, in 14-point Times New Roman.

March 2, 2023                                    */s/ J. Scott Ballenger*
                                                 J. Scott Ballenger
                                                 *Amicus Curiae for Appellants*

## CERTIFICATE OF SERVICE

I, J. Scott Ballenger, hereby certify that on March 2, 2023, I caused seven (7) copies of this Reply Brief of *Amicus Curiae* to be dispatched by FedEx delivery, to the Clerk of the Court for the United States Court of Appeals for the Third Circuit, and filed an electronic copy of the brief via CM/ECF. I also caused a copy of this brief to be served electronically on the following counsel for Appellee:

[Insert O/C]

[March 2, 2023]                                  */s/ J. Scott Ballenger*
                                                 J. Scott Ballenger
                                                 *Amicus Curiae for Appellants*

## CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEF

I, J. Scott Ballenger, hereby certify that the text of the electronically filed brief is identical to the text of the original copies that were dispatched on March 2, 2023, by FedEx delivery to the Clerk of the Court of the United States Court of Appeals for the Third Circuit

March 2, 2023                           */s/ J. Scott Ballenger*
                                        J. Scott Ballenger
                                        *Amicus Curiae for Appellants*

## CERTIFICATE OF PERFORMANCE OF VIRUS CHECK

I, J. Scott Ballenger, hereby certify that on March 2, 2023, I caused a virus check to be performed on the electronically filed copy of this brief using the following virus software: [Vipre Virus Protection, EndpointSecurity, version 11.0.7633.] No virus was detected.

March 2, 2023

*/s/ J. Scott Ballenger*
J. Scott Ballenger
*Amicus Curiae for Appellants*